IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OLWIN METAL FABRICATION LLC,

    Plaintiff,

v.

MULTICAM, INC.,

and

MULTICAM GREAT LAKES, INC. D/B/A MULTICAM OHIO VALLEY TECHNOLOGY CENTER,

    Defendants.

:
:
:
:
:

Case No. 3:22-CV-333-WHR-PBS

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN PART DEFENDANT MULTICAM, INC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (DOC. #6); MOTION IS OVERRULED AS TO COUNT I AND SUSTAINED AS TO COUNTS II–V; PLAINTIFF GIVEN LEAVE TO FILE AN AMENDED COMPLAINT AS TO COUNTS II-V, WITHIN 21 DAYS FROM DATE OF FILING OF THIS DECISION AND ENTRY, SUBJECT TO THE STRICTURES OF FED. R. CIV. P. 11

---

Plaintiff, Olwin Metal Fabrication LLC ("Olwin"), filed suit against MultiCam, Inc. ("MultiCam"), and MultiCam Great Lakes, Inc., doing business as MultiCam Ohio Valley Technology Center ("Great Lakes") (collectively "Defendants"), asserting claims of breach of contract, nonacceptance, revocation of acceptance,

fraud, and unjust enrichment.[1]  MultiCam has filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. #6.  Olwin has filed a Memorandum in Opposition to the motion.  Doc. #8. Defendant MultiCam has filed a Reply. Doc #9.

I.     **Background and Procedural History**

On November 12, 2021, Olwin began discussions with one or both Defendants regarding the purchase of an ARCOS Series Plasma Machine (the "Machine"). Doc. #4 at PageID #208. On November 17, 2021, Olwin received an email from Brian Newhouse—an individual responsible for Ohio Valley Sales with a "@multicamoh.com" email address and a "MultiCam Complete CNC Solutions" signature graphic—that referenced previous contact with Olwin, a warranty, and a series of tests for a cutting machine. *Id.* at PageID #220. On November 18, 2021, Olwin purchased the Machine and paid a 50% deposit, and then paid the remaining 50% on December 16, 2021. *Id.* at PageID #209. The Machine was delivered on December 20, 2021, and then from January 10 to January 18, 2022, a MultiCam subcontractor installed the Machine and trained Olwin on its use. However, according to the Complaint, *id.* at PageID #209, the Machine has never worked as promised.

---

[1]  This Court's jurisdiction is based on diversity of citizenship. 28 U.S.C. §1332.  Olwin is an Ohio company.  MultiCam is headquartered in Texas, and Great Lakes is headquartered in Michigan.

As a part of the sale of the Machine, Olwin received a copy of The ARCOS Bridge & Rail Plasma Agreement ("Agreement"). Doc. #4, PageID #221–46. The Agreement, which was endorsed—but not signed—by Brian Newhouse of Great Lakes, was digitally signed as accepted by Derrick Olwin on November 18, 2021. *Id.* at PageID #243. The Agreement stated that complete installation would be provided and guaranteed the Machine would be "fully functional and operating properly at the time of installation." *Id.* The Agreement also stated that all quotations were subject to Terms and Conditions, *id.*, which were included at the end of the Agreement, *id.* at PageID #245–46, and under those Terms and Conditions "[w]ritten acceptance of this Quotation by Purchaser accompanied by a deposit accepted by Manufacturer [MultiCam Inc.] will constitute an agreement binding on both parties." *Id.* at PageID #255. The Terms and Conditions further stated that the Machine would not be shipped until full payment was received, and MultiCam warranted that "the [Machine] will be free from defects in material and workmanship for a period of 13 months from the date of shipment." *Id.*

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions

4

"must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Analysis

MultiCam argues that Olwin's Amended Complaint, as currently pled, must be dismissed for all five counts against MultiCam for failing to either plead their claim with sufficient particularity, plead distinct and actionable claims, or meet heightened pleading requirements.

#### a. Count 1 – Breach of Contract

MultiCam contends that Olwin's claim for breach of contract fails because it does not allege the basic information necessary to show that it has a probable right to relief, specifically which defendant was a party to the contract, which provision was at issue, and how there was a breach. Doc. #6, PageID #254–55.

For a breach of contract claim, "a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Nilavar v. Osborn*, 738 N.E.2d 1271, 1281 (Ohio Ct. App. 2000) (quoting *Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). It is also "well established" that a contract only binds "the parties to the contract *and those*

5

*in privity with them*," and that suits for a breach of contract can be asserted "only by the parties to the contract or those deriving rights from the contracting parties." *Ohio Sav. Bank v. H. L. Vokes Co.*, 560 N.E.2d 1328, 1332 (1989) (emphasis added).

Olwin's Amended Complaint incorporates, by reference, the twenty-six (26) page Agreement. Doc. #4, PageID #209, 221–46. The first page of the Agreement states that it was "Presented to: Derrick Olwin Olwin Metal Fabrication." *Id.*, PageID #221. The second page of the Agreement states that MultiCam is a "global supplier" with a "corporate office and manufacturing facility" in Dallas, Texas and "over 50 technology centers across the globe" where a customer can "find a location near [them] for local sales ... service, and support." *Id.*, PageID #222. It then lays out that Olwin's local technology centers are in Grand Rapids, Michigan, and Cincinnati, Ohio. *Id.*, PageID #223. The Agreement also lists an included installation package, local and phone support packages, and a one-year parts and labor warranty "subject to our Terms & Conditions," *id.*, PageID #242, and then provides a short summary list of the Agreement's terms, which encompassed, among other things, "50% due with order 50% [sic] due prior to machine shipping" and free on board shipping from Dallas. *Id.*, PageID #243. The Agreement concludes with a preprinted thanks from Brian Newhouse of Great Lakes, *id.*, a generic textual disclaimer about the Agreement being subject to "standard Terms & Conditions," *id.*, a promise of complete installation, a guarantee that the Machine "will be fully functional and operating properly at the time of

6

installation," *id.*, and a short two page set of "TERMS AND CONDITIONS." *Id.*, PageID #245–46.

The introduction of the Agreement's own Terms and Conditions states "[w]ritten acceptance of this Quotation by Purchaser accompanied by a deposit accepted by Manufacturer will constitute an agreement binding on both parties." *Id.*, PageID #155. That same paragraph defines "Manufacturer" as "MultiCam Inc." Also, the "Payment Terms," *id.*, match those included earlier in the Agreement regarding both a separate 50% down payment and a 50% payment prior to shipping. *Id.*, PageID #153. In addition to the "Terms and Conditions" expressly stating that the Agreement was between "MultiCam Inc." and the Purchaser, the bottom of both pages of the "Terms and Conditions" lists the name, address, contact info, and website for MultiCam. *Id.*, PageID #155–56.

Construing the allegations in the Amended Complaint as true and drawing all reasonable inferences in Olwin's favor, the Court concludes that Olwin has stated a plausible claim that MultiCam breached its contractual duty by failing to provide Olwin with a fully functioning and properly operating MultiCam CNC Machine. Olwin has shown, through its Complaint, the existence of a contract, namely the Agreement attached to and incorporated with the Amended Complaint, and that a term of said contract was the guarantee that the Machine would be "fully functional and operating properly at the time of installation." *Id.*, PageID #155. Olwin claims MultiCam breached the contract by providing a machine that did not work as promised, citing three technical benchmarks of performance, ultimately

7

causing it damages in the amount of the Machine's total purchase price, plus additional damages. *Id.*, PageID #119–20. This pleading covers the "relevant terms of the ... agreement, how the agreement was breached, and how the breach harmed [it]." *See Derbabian v. Bank of America, N.A.*, 587 Fed. Appx. 949, 954 (6th Cir. 2014) (affirming the dismissal of a breach of contract claim for not adequately pleading each element).

MultiCam contends that Olwin fails to specify which of the named Defendants were a party to the purported contract. Doc. #6, PageID #254, But, as previously stated, the Agreement, which was incorporated by reference into the Amended Complaint, expressly lays out in its Terms and Conditions that acceptance of the quotation by payment of the quoted purchase price constituted a contract between the Purchaser, Olwin, and the Manufacturer, MultiCam. *See* Doc. #1, PageID #155. Despite MultiCam's contentions, Olwin's use of the collective "Defendants" in its Amended Complaint does not vitiate its claim that MultiCam was a party to the Agreement, and that their breach of said Agreement by delivering the non-conforming Machine caused Olwin damages. While the face of the Agreement also appears to include Great Lakes as a party to the contract, the face of the Amended Complaint has made sufficient factual allegations regarding MultiCam being a party to the contract to bring it across "the line from conceivable to plausible" that MultiCam is liable for breaching the Agreement. *See Twombly*, 555 U.S. at 570, *Iqbal*, 556 U.S. at 679.

Accordingly, as to Count I, the Court OVERRULES MultiCam's Motion to Dismiss Plaintiff's First Amended Complaint.

### b. Counts 2 and 3 – Non-acceptance and Revocation

MultiCam also contends that Olwin's second and third claims for relief—non-acceptance and revocation—should be dismissed as they are duplicative of the breach of contract claim and are only "events which give rise to a claim for breach of contract" rather than separate causes of action. Doc. #6, PageID #255. In the Amended Complaint, Doc. #1, PageID#120–21, Olwin cites Texas Business & Commercial Code §§ 2.606 and 2.608 for its non-acceptance and revocation claims, respectively. However, neither section of the Code provides a separate cause of action but instead only defines each term's legal meaning in the context of the sale of goods.

In its Memorandum in Opposition, Doc. #8, PageID #270, Olwin cites to a separate section of the Code—§ 2.711—for the premise that it "may recover breach of contract remedies for delivery of non-conforming goods." *Id.* (citing *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 310 (Tx. App. 2006)). However, "the issue of [rejection or revocation i]s not an independent theory of recovery[,]" but is instead a component of a breach of contract claim. *Emerson Elec. Co.*, 201 S.W.3d at 310. Olwin's own arguments further support this, by stating that the Amended Complaint alternatively alleged that it either did not accept or revoked acceptance of the Machine "based on its non-conformity,"

9

and that "[t]hese allegations further support [Olwin's] breach of contract claim[.]" *Id.*

Accordingly, without restricting Olwin's ability to use either revocation or non-acceptance as an alternative basis for arguing its breach of contract claim, the Court SUSTAINS MultiCam's Motion to Dismiss Plaintiff's First Amended Complaint as to Counts II–III.

### c. Count 4 – Fraud

MultiCam alleges that Olwin's claim of fraud fails for not meeting the heightened pleading requirement laid out in Rule 9(b) of the Federal Rules of Civil Procedure. Doc. #6, PageID 253. MultiCam also contends that Olwin's fraud claim constitutes "'group pleading' [by] sweepingly assigning conduct to a group of defendants without specifying *which* defendant committed *what* conduct." *Id.* (citing *U.S. ex rel Blesdoe v. Cmty Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)) (emphasis in original).

In its Amended Complaint, Doc. #4, PageID #208–12, Olwin asserts that on November 12, 2021, Olwin and MultiCam began discussions about Olwin purchasing the Machine, *id.*, PageID #208, and that Olwin received an email on November 17, 2021, from MultiCam, "providing specific assurances as to the Machine's capabilities." *Id.* The email in question was sent by Brian Newhouse, *id.*, PageID # 220, whose signature block reflects a position involving "Ohio Valley Sales," a physical address in Cincinnati, Ohio, and an email address affiliating him with "multicamoh.com." *Id.* The Agreement, *id.*, PageID #243, separately identifies

10

Brian Newhouse as an employee of Great Lakes in an unsigned acknowledgment block; *id.;* however, the Agreement was not signed by anyone other than Derrick Olwin, who signed it digitally on November 18, 2021. *Id.* The Amended Complaint further alleges that:

> Defendants and their employees and/or agents acting within the course and scope of their employment, and or within the actual or apparent authority of their agency, made material representations as to the capabilities of the Machine including, but not limited to, the representations made in [the email] and [the Agreement.]

*Id.*, PageID #211. Olwin then generally contends that those representations were knowingly false or "made with reckless disregard of their truth or falsity," and were made intentionally to induce Olwin's reliance in choosing to purchase the Machine. *Id.*

Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud," however intent "may be alleged generally." Additionally, "[t]o satisfy Rule 9(b), a plaintiff's complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *City of Taylor Gen. Employees Ret. Sys. v. Astec Indus.*, 29 F.4th 802, 810 (6th Cir. 2022) (internal citations and quotations omitted). In short, the complaint must lay out the "'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

11

Olwin's Amended Complaint appears to address two specific statements that were allegedly fraudulent: that the Machine was thoroughly tested to exact cutting specifications, Doc. #4, PageID #220, and that the Machine would be "fully functional and operating properly at the time of installation." *Id.*, PageID #243. The Amended Complaint identifies the speaker of those statements as "Defendants and their employees and/or agents," *id.*, PageID #211, states that the statements were made on November 17 and 18, 2021, and contends that the statements were fraudulent because "the Machine was not capable of performing the ways in which Defendants specifically represented." *Id.*, PageID #212.

The Court finds that Olwin has failed to plead the claim of fraud with sufficient particularity under Rule 9(b). Olwin asserts that "Defendants and their employees and/or agents" fraudulently misrepresented the Machine's capabilities to induce Olwin to purchase it, but Olwin does not establish sufficient facts to establish that an employer/employee or master/servant relationship existed between either MultiCam and Great Lakes or MultiCam and Brian Newhouse. The Amended Complaint recognizes MultiCam and Great Lakes as distinct corporations from different states—Texas and Michigan, respectively—with different principal places of business. Doc. #4, PageID #208. No information is provided to indicate what the legal relationship is between MultiCam and Great Lakes, such as whether Great Lakes is a wholly or partially owned subsidiary of MultiCam, a "franchise" of MultiCam, or a totally independent entity. Olwin attempts to refine its presentation of the Defendants' relationship in its Motion in Opposition, Doc. #8, PageID #266–

67, but that attempt is unavailing, as Olwin's argument that Defendants were "acting as one entity as it relates to the purchase of the Machine" is not supported by any facts.[2]

Accordingly, the Court SUSTAINS MultiCam's Motion to Dismiss Plaintiff's First Amended Complaint as to Count IV.

### d. Count 5 – Unjust Enrichment

MultiCam's final contention is that Olwin's unjust enrichment claim fails on both procedure and substance, Doc. #6, PageID #257, because the pleading was not in the alternative to the breach of contract claim, did not facially allege all the elements of the unjust enrichment claim, and failed to give MultiCam adequate notice of whether the claim involves itself or Great Lakes. *Id.*

"To state a claim for unjust enrichment in Ohio, Plaintiffs must plausibly allege that (1) they conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Duff v. Centene Corp.*, 565 F.Supp. 3d 1004, 1028 (S.D. Ohio 2021) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). Under federal law, "a

---

[2] Indeed, as discussed in Section I, *supra* at 2–3, Brian Newhouse—the only named individual in the Complaint's supporting documentation, might appear to have connections to MultiCam as a sales representative, *see* Doc. #4, PageID #220, while also being an employee of Great Lakes, *id.* at PageID #243, but that is not sufficient to claim the Defendants are a single entity. Likewise, while Olwin argues that MultiCam and Great Lakes are "collectively [known] as 'MultiCam Complete CNC Solutions,'" it does not support that claim with any facts beyond the similarities in the Defendants' naming, website branding, *see* Doc. #4, PageID ##215–19, and MultiCam's self-description, *id.*, PageID ##222–23, which is not a sufficient allegation that they are the same legal entity.

13

party may plead both a breach of contract claim and an unjust enrichment claim, in the alternative, without negating the validity of either," so long as there is a dispute on either the existence of, or liability of a party under, a contract. *Id.* at 1029 (citing *Ortega v. Wells Fargo Bank, N.A.*, No. 3:11CV01734, 2012 U.S. Dist. LEXIS 11409, at *11 (N.D. Ohio Jan. 31, 2012)).

The Court finds that Olwin has failed to plausibly allege unjust enrichment against MultiCam. In the Amended Complaint, Doc. #4, PageID #212, Olwin asserts that "Defendants have been unjustly enriched … by failing to provide a machine that was fully functional and operating … while retaining the full purchase price of the Machine." Olwin also states that they "purchased the Machine from Defendants on November 18, 2021, … [and] put down [$111,652.00] on the Machine," and that on December 16, 2021, they "paid the remaining [balance] due on the Machine, for a total purchase price of $223,304.00." *Id.*, PageID #119. But Olwin does not specify which of the Defendants the monies were sent to, nor which of the Defendants delivered the Machine. *See id.* (stating "the Machine was delivered to Olwin's place of business" without stating who made the delivery).

Olwin has alleged that they conferred a benefit, but they have not pleaded sufficient facts for this Court to identify either upon whom the benefit was conferred or that the recipient of that benefit had knowledge of the benefit. As laid out in the Amended Complaint, the assertions regarding Olwin's payments for the Machine do not permit the Court to "infer more than the mere possibility" that MultiCam knowingly received the benefit of Olwin's payments. In addition, as

14

outlined *supra* in Section III(c), Olwin has also failed to plead enough facts to establish that a legal relationship exists between MultiCam and Great Lakes (and what that relationship was), thus enabling Olwin to claim either or both defendants are jointly and severally liable for the actions or obligations of the other.

Accordingly, the Court SUSTAINS MultiCam's Motion to Dismiss Plaintiff's First Amended Complaint as to Count V.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss, Doc. #6, is overruled as to Count I, and, without restricting Olwin's ability to use either revocation or non-acceptance as an alternative basis for arguing its breach of contract claim, sustained as to Counts II–V.

Plaintiff is given leave to file an amended complaint, as to Counts II-V, subject to the strictures of Fed. R. Civ. P. 11, within 21 days from the date of filing of this decision.

Date: September 27, 2023      _/s/ Walter H. Rice_
                              WALTER H. RICE
                              UNITED STATES DISTRICT JUDGE