THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

OLWIN METAL
FABRICATION, LLC,

    Plaintiff,

v.

MULTICAM, INC., *et al.*,

    Defendants.

Case No. 3:22-cv-333

Judge Walter H. Rice

Mag. Judge Peter B. Silvain, Jr.

---

ENTRY SUSTAINING DEFENDANT MULTICAM, INC.'S MOTION TO DISMISS, IN PART, THE SECOND AMENDED COMPLAINT OF PLAINTIFF OLWIN METAL FABRICATION, LLC (DOC. #41); CLAIMS TWO AND THREE OF OLWIN'S SECOND AMENDED COMPLAINT (DOC. #38) ARE DISMISSED WITH PREJUDICE AS AGAINST MULTICAM; FINAL JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF MULTICAM AND AGAINST OLWIN AS TO THOSE CLAIMS

---

On October 19, 2023, Plaintiff Olwin Metal Fabrication, LLC, a pass-through entity with both members being residents of Ohio, filed its Second Amended Complaint, raising claims of Breach of Contract (Claim One), Fraud (Claim Two), and Unjust Enrichment (Claim Three) against Defendants MultiCam, Inc. ("MultiCam"), a Texas corporation, and MultiCam Great Lakes, Inc., d/b/a MultiCam Ohio Valley Technology Center ("Great Lakes"), a Michigan corporation. (Doc. #38, PAGEID 476-77, ¶¶ 1-3). MultiCam subsequently filed a Motion to Dismiss, In Part, Olwin's Second Amended Complaint, moving that Claims Two (fraud) and Three (unjust enrichment) be dismissed with prejudice as, for a third time, Olwin has failed to state claims upon which relief may

be granted. (Motion, Doc. #41, PAGEID 535, citing FED.R.CIV.P. 12(b)(6)). For the reasons set forth below, the Motion is SUSTAINED.

I.      **Factual Background and Procedural History**

As MultiCam has moved to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations in the Second Amended Complaint as true. *Solo v. Utd. Parcel Serv. Co.*, 819 F.3d 788, 793 (6th Cir. 2016), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "On or about November 12, 2021, Olwin and Defendants began discussions about Olwin's interest in purchasing the ARCOS Series Plasma Machine (the 'Machine')." (Doc. #38, PAGEID 477, ¶ 6). On November 17, 2021, Brian Newhouse, a Great Lakes sales representative, sent an email to Derrick Olwin, owner of Olwin, making the following representations about the Machine: "All the standard bevel cuts are thoroughly tested: A, V, Y, Inverted Y, X and K[;] Major angles tested 45,30,15[; and] The cut charts are included in the Sigmanest Software[.]" (Ex. B, Doc. #38-1, PAGEID 491). The signature block contained a logo accompanied by the phrase "MULTICAM Complete CNC Solutions[.]" (*Id.*). The next day, Olwin agreed to purchase the Machine, paying $111,652.00, fifty percent of the sale price, to Great Lakes. (Doc. #38, PAGEID 477, ¶ 8). Olwin agreed to the ARCOS Bridge & Rail Plasma Agreement ("Agreement"), which contained an express warranty that "the Machine would be 'fully functional and operating properly' at the time of installation." (*Id.* at PAGEID 477-78, ¶ 9 (citation omitted)). The Agreement contained descriptions and specifications of the Machine and its component parts, along with a one-year parts and labor warranty. (Ex. D, Doc. #38-1, PAGEID 510-15).

The Agreement was executed by Newhouse, on behalf of Great Lakes, and Derrick Olwin, on behalf of Olwin, with no mention of MultiCam. (Doc. #38-1, PAGEID 517). The Agreement's Terms and Conditions contained a choice of law clause, providing that Texas law governed the Agreement. (*Id.* at PAGEID 520, ¶ 13). "On or about December 16, 2021, Olwin paid the remaining 50% due on the Machine, for a total purchase price of $223,304.00." (Doc. #38, PAGEID 478, ¶ 11). This payment, like the previous payment, was made to Great Lakes. (*Id.* at PAGEID 478, ¶ 13; Ex. C, Doc. #38-1, PAGEID 492-94). However, the Machine was shipped from MultiCam's facility in Dallas to Olwin's facility in Dayton, Ohio. (Ex. E, Doc. #38-1, PAGEID 521). In January 2022, "MultiCam's subcontractor installed the machine and performed training for Olwin on the Machine." (Doc. #38, PAGEID 479, ¶ 16). However, the Machine suffered from myriad defects, and "[c]onsistent with the Agreement listing MultiCam and Great Lakes as sellers, representatives from MultiCam and Great Lakes worked together to troubleshoot the Machine's deficiencies." (*Id.* at ¶ 18). Yet, despite Defendants' efforts, the Machine "has not worked as promised[,]" (*id.* at ¶ 17), and has been worthless to Olwin. (*Id.* at ¶ 21).

On March 15, 2022, Olwin filed suit against MultiCam and Great Lakes in Montgomery County, Ohio, Court of Common Pleas (Notice of Removal, Doc. #1, PAGEID 1-2, ¶ 1), and on April 14, 2022, filed an amended complaint. (*Id.* at PAGEID 2, ¶ 7; First Am. Compl., Doc. #4). The First Amended Complaint raised five claims—the breach of contract, fraud, and unjust enrichment claims described above, and two claims arising under Texas statutory law. (Doc. #4, PAGEID 210-12, ¶¶ 17-34). Also on April 14, MultiCam removed the matter to this Court, but it was remanded to the state

3

court on September 28, 2022, as MultiCam had not shown the citizenship of Olwin's two owner-members, and thus could not conclusively demonstrate that there was complete diversity. (*Id.* at PAGEID 3, ¶ 11, citing Case No. 3:22-cv-100). MultiCam subsequently propounded discovery on Olwin, and based on Olwin's answers to interrogatories dated October 26, 2022, ascertained that Olwin's members are Ohio residents and that complete diversity existed. (*Id.* at ¶ 13, citing Resp. to Interrogatories, Doc. #1-3, PAGEID 20). On November 21, 2022, MultiCam, with Great Lakes's consent, again removed the case. (*Id.* at PAGEID 2, ¶ 2). This removal was proper, as MultiCam is correct that complete diversity exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

On November 28, 2022, MultiCam moved to dismiss the First Amended Complaint *in toto* as against MultiCam. (Doc. #6). On September 28, 2023, this Court overruled MultiCam's motion as to the breach of contract claim but sustained it as to the fraud, unjust enrichment, and the two Texas statutory claims, dismissing the latter four without prejudice to refiling subject to the strictures of Rule 11. (Entry, Doc. #32, PAGEID 398). Olwin subsequently filed its Second Amended Complaint, abandoning its Texas statutory claims and repleading only its claims for breach of contract (Claim One), fraud (Claim Two), and unjust enrichment (Claim Three). (Doc. #38). On November 2, 2023, MultiCam filed the instant Motion. (Doc. #41).

II. **Legal Standards**

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the

4

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Claims of fraud, however, are governed by Rule 9(b), under which "a party must state *with particularity* the circumstances constituting fraud . . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED.R.CIV.P. 9(b) (emphasis added). The United States Court of Appeals for the Sixth Circuit has interpreted Rule 9(b) to require a claimant to specify the " who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks and citation omitted).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the [opposing party] has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007), citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on the motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Treesh*, 487 F.3d at 476.

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line

5

from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Legal conclusions "must be supported by well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief." *Id.* at 679.

In ruling on a motion to dismiss, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008).

### III. Analysis

#### A. Claim Two: Fraud

Before evaluating, the Court must determine what state's substantive law applies, as Claims Two and Three arise under state law and the Agreement has a choice-of-law clause  As this Court is sited in Ohio, it must apply Ohio's choice-of-law rules. *See, e.g., Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) ("According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule."). "Under Ohio law, contractual choice-of-law provisions are valid and enforceable." *Miami Valley Mobile Health Servs., Inc., v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 932 (S.D. Ohio 2012) (Rice, J.), citing

6

*Schulke Radio Prod. Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438-39 (1983).[1] Thus, as MultiCam notes and Olwin does not dispute, Texas law applies to Olwin's claims.

Texas law requires a plaintiff claiming fraud to plead that: (1) the defendant made a material misrepresentation, (2) the statement was made with knowledge of its falsity or in reckless disregard of the truth, (3) the statement was made with the intent of inducing reliance by plaintiff, (4) plaintiff did, in fact, rely on the statement; and (5) plaintiff suffered a consequent injury. (Doc. #41, PAGEID 536-37, quoting *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)). Olwin's fraud claim arises out of statements contained in two sources: (1) Newhouse's email; and (2) the Agreement. (Doc. #41, PAGEID 538, 540). MultiCam argues that Olwin lacks a viable fraud claim based on those statements, for four reasons. *First*, Newhouse is a Great Lakes employee, and Olwin has failed to allege an agent-principal relationship between Newhouse and MultiCam, such that the former's representations could be imputed to the latter. (*Id.* at PAGEID 537-38). *Second*, Olwin claims only that MultiCam or Great Lakes made misrepresentations *in the Agreement itself*—specifically, that the Machine and specific component parts would work properly. That the Machine did not work may give rise to a breach of contract claim, but absent some indicia that MultiCam or Great Lakes knew that the contractual provisions were false at the time the Agreement was consummated, any misrepresentations cannot support a freestanding fraud claim. (*Id.* at PAGEID 540,

---

[1] Even if this Court were to construe the Agreement as an adhesion contract, rather than a bilateral meeting of the minds, the choice-of-law provision would still apply so long as its application "does not 'result in substantial injustice.'" *Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015), quoting Restatement (Second) of Conflict of Laws § 187 cmt. b. As Olwin is a sophisticated party that negotiated an arms-length purchase of the Machine, no substantial injustice results from its enforcement.

7

quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp.*, 823 S.W.2d 591, 597 (Tex. 1992), *superseded by statute on other grounds as discussed in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225-26 (Tex. 2002); *Sudan v. Sudan*, 145 S.W.3d 280, 290 (Tex. App. Houston 14th Dist. 2004), *rev'd on other grounds*, 199 S.W.3d 291 (Tex. 2006)).

*Third*, MultiCam claims that while Olwin alleged in a conclusory fashion that MultiCam made false statements in the Agreement, it failed to identify what those statements were, and thus failed to plead with the specificity required by Rule 9(b). (Doc. #41, PAGEID 540, quoting Doc. #38, PAGEID 482, ¶ 35). *Finally*, Olwin failed to identify: which statements by Newhouse or in the Agreement that it relied upon in entering the Agreement; how it relied upon the statements; or why, as is required under Texas law, its reliance was justified. (*Id.* at PAGEID 541, quoting Doc. #38, PAGEID 482, ¶ 36; *Tri-Med Fin. Co. v. Nat'l Century Fin. Enterprises, Inc.*, 2000 WL 282245, *7, 208 F.3d 215 (6th Cir. Mar. 6, 2000) (unpublished table disposition); *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 386 (Tex. App. Houston 1st Dist. 2012), *vacated per agreement at Devon Energy Holdings, L.L.C. v. Allen*, No. 12-0253, 2013 WL 12499073 (Tex. Jan. 11, 2013)). MultiCam asserts that because failure to plausibly allege all elements is fatal to a fraud claim, and Olwin has failed with respect to plausibly allege several of the elements, Claim Two should be dismissed with prejudice. (*Id.*).

Olwin argues that it specifically alleged false representations by Newhouse in his email to Plaintiff, and that the Agreement contained specific guarantees about the Machine. (Doc. #44, PAGEID 559-60, quoting Doc. #38, PAGEID 477-78, 481; ¶¶ 9,

8

32-34; citing Doc. #38-1, PAGEID 517). Olwin also notes that the Court allowed the breach of contract claim to proceed because the Court concluded that it was plausible that MultiCam and Great Lakes were in privity with respect to the sale of the Machine. Olwin argues that, just as MultiCam could be bound by Great Lakes's assent to the Agreement, MultiCam can be bound by Newhouse and Great Lakes's representations. (*Id.* at PAGEID 560-61, quoting Doc. #32, PAGEID 402-03). Further, Olwin asserts that MultiCam and Great Lakes hold themselves out as part of a unified company, MultiCam Complete CNC Solutions, and the "Second Amended Complaint is replete with evidence that MultiCam and Great Lakes worked together on the sale, agreement, payment, delivery, installation, training and troubleshooting of the Machine." (*Id.* at PAGEID 562-63, quoting Doc. #38, PAGEID 478-79, ¶¶ 10-16, 18). Thus, Olwin concludes, the representations made by Newhouse in the email and by Great Lakes in the Agreement are attributable to MultiCam. (*Id.* at PAGEID 563). "It was the representations contained within the Agreement, coupled with the specific representations from a MultiCam Complete CNC Solutions employee that Plaintiff relied upon to purchase the Machine. Unfortunately, the Machine could not perform as represented by Defendants, rendering those representations both in the Agreement and the email fraudulent." (*Id.*).

For Claim Two, the Court need not address whether Newhouse's statements may be attributed to Multi-Cam; even if the statements are attributable, thus satisfying the "who" element of fraud, they do not satisfy the "what." The only representations made by Newhouse were: "All the standard bevel cuts are thoroughly tested: A, V, Y, Inverted Y, X and K[;] Major angles tested 45,30,15[; and] The cut charts are included in

9

the Sigmanest Software." (Doc. #38, PAGEID 481, ¶ 32). Yet, the problems with the Machine identified in the Second Amended Complaint are: "the 5-axis feature does not work properly when attempting to bevel; the Machine will not part mark with the Hypertherm XPR as it should (without modification of G-code); and the Machine will not pre-pierce (without modification of G-code)." (*Id.* at PAGEID 479, ¶ 17). There are no allegations of issues with the bevel cuts; nor does Olwin claim that the cut charts were not properly loaded onto the Machine's software. Thus, it is not apparent that Newhouse even stated anything untrue.

More importantly, there is no reasonable way to read Newhouse's statements as *fraudulent*, *i.e.*, with knowledge of falsity or reckless disregard of the truth. *Anderson*, 550 S.W.3d at 614. The Second Amended Complaint's allegations and supporting materials are devoid of any indication that that the bevel cuts and angles were not tested prior to shipping, much less that Newhouse knew that. Nor is there any indication that Newhouse knew or reasonably should have known that the cut charts loaded on the Machine did not work properly with the software, or that the cut charts would cause the Machine to malfunction.

The same analysis applies with respect to the statements made in the Agreement. Other than the 5-axis head not working properly (Doc. #38, PAGEID 479, ¶ 17), Olwin does not allege whether, much less how, problems with the other specifications represented by Great Lakes and MultiCam[2] (*id.* at PAGEID 481, ¶ 33), prevented the Machine from working properly. More importantly, as above, Olwin does

---

[2] Because it does not affect the outcome, the Court assumes *arguendo* for the purpose of Claim Two that Defendants were in privity such that contractual representations made by Great Lakes are attributable to MultiCam.

10

not allege that MultiCam and Great Lakes knew or should have known that any of the specified components would malfunction. Similarly, the statement that MultiCam and Great Lakes "will guarantee the MultiCam CNC to be fully functional and operating properly at the time of installation" (*id*. at ¶ 34), is a provision of the Agreement, as Olwin concedes. (*Id*., quoting Doc. #38-1, PAGEID 517). Olwin does not allege that MultiCam and Great Lakes made that promise knowing that the Machine would not work, or recklessly ignoring facts indicating that it would not, much less that MultiCam and Great Lakes did so to induce Olwin to sign the Agreement.

In sum, this is simply a case where a product promised by a contract allegedly did not work as promised, and under Texas law, "[a]s a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort" such as fraud. *Crim Truck*, 823 S.W.2d at 597. The Second Amended Complaint and its exhibits gives this Court no reason to depart from that general rule.

Olwin attempts to save its claim by alleging that "[a]t all relevant times, these various representations were false and were known by MultiCam and Great Lakes to be false; or alternatively, these various representations were made with reckless disregard of their truth or falsity. Such representations were made with the intent that Plaintiff rely thereon to its detriment" (Doc. #38, PAGEID 482, ¶ 35), and that Olwin "did, in fact, reasonably rely to its detriment on such representations by agreeing to purchase the Machine even though the Machine was not capable of performing in the ways in which Defendants specifically represented." (*Id*. at ¶ 36). Yet, *Twombly* and *Iqbal* put to rest the notion that such conclusory allegations could satisfy Rule 8(a), much less the more demanding Rule 9(b): "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 540 U.S. at 555; *see also id.*, quoting *Twombly*, 540 U.S. at 555 ("Although for the purposes of a motion to dismiss we must take all of the [well-pleaded] factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'"). The Court will not consider these allegations, as they are devoid of substance.

Absent any plausible allegation that Newhouse, Great Lakes, or MultiCam itself made any knowingly false statements with respect to the Machine, Olwin has failed to set forth a viable claim for fraud. Accordingly, Claim Two must be dismissed.

**B.    Claim Three: Unjust Enrichment**

In its September 28, 2023, Entry, the Court held that Olwin's unjust enrichment claim, while permissible to be pleaded in the alternative, failed as pleaded for two reasons. *First*, Olwin did "not specify which of the Defendants the monies were sent to, nor which of the Defendants delivered the Machine." (Doc. #32, PAGEID 411). Thus, Olwin had "not pleaded sufficient facts for this Court to identify either upon whom the benefit was conferred or that the recipient of that benefit had knowledge of the benefit." *Id*. *Second*, Olwin "failed to plead enough facts to establish that a legal relationship exists between MultiCam and Great Lakes (and what that relationship was), thus enabling Olwin to claim either or both defendants are jointly and severally liable for the actions or obligations of the other." (*Id*. at PAGEID 412).

Olwin claims that it has cured the defects with the Second Amended Complaint by alleging that: (1) it paid Great Lakes $223,304.00 for the machine; (2) MultiCam delivered the machine to Olwin, acknowledging receipt of the benefit; and (3)

Defendants kept the money even though the Machine never worked properly, despite MultiCam and Great Lakes working together to troubleshoot issues. (Doc. #44, PAGEID 563-65, quoting Doc. #38, PAGEID 479, ¶¶ 17, 19; citing MultiCam Answer, Doc. #40, PAGEID 529, ¶ 18). In so pleading, Olwin argues, it has met its burden of alleging that (1) Olwin conferred a benefit on MultiCam; (2) MultiCam had knowledge of the benefit; and (3) MultiCam retained the benefit when doing so was unjust. (*Id*. at PAGEID 563, citing *Jones v. Ohio Nat'l Life Ins. Co.*, No. 1:20-cv-654, 2022 WL 1128596, at *11 (S.D. Ohio Apr. 15, 2022)).

MultiCam correctly notes that under Texas law, unjust enrichment is a quasi-contractual remedy theory only available when a party obtains an undue benefit *in the absence of a valid contract*. (Reply, Doc. #46, PAGEID 588, quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000); *Mason v. Mason*, No. 07-12-00007-cv, 2014 WL 199649, at *5 (Tex. App. Amarillo Jan. 13, 2014); citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992); *Reveille Trucking, Inc. v. Lear Corp.*, No. 4:14-cv-511, 2017 WL 661521, at *13 (S.D. Tex. Feb. 17, 2017)). The Court has already determined that Olwin has a plausible breach of contract claim against MultiCam. (Doc. #32, PAGEID 405-06). Thus, Olwin could theoretically recover for unjust enrichment only if it was determined that no contractual relationship existed between Olwin and MultiCam, but that MultiCam wrongfully retained a benefit conferred by Olwin. Yet, Olwin's Second Amended Complaint forecloses that alternative. Olwin alleges that "*Great Lakes* received, and retained, the full purchase [price] of the Machine, totaling $223,304.00." (Doc. #38, PAGEID 483, ¶ 42 (emphasis added)). Olwin does not allege that MultiCam ever obtained or retained any of the purchase

13

price. Nor does Olwin claim that it conferred another benefit on either or both of the Defendants besides payment of the purchase price. As there was no benefit conferred upon and retained by MultiCam, which Olwin concedes is a separate entity from Great Lakes (*id.* at PAGEID 476-77, ¶¶ 2-4), Olwin cannot plausibly allege an unjust enrichment claim against MultiCam, and Claim Three must be dismissed as against it.

### C. Dismissal with Prejudice

MultiCam has asked that Claims Two and Three be dismissed as against it with prejudice; *i.e.*, that Olwin not be granted leave to amend further. "The district court has discretion in determining whether to permit an amendment[.]" *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). While the Court is mindful of its obligation to "freely grant leave as justice so requires[,]" FED.R.CIV.P. 15(a)(2), a "district court may deny a plaintiff leave to amend his or her complaint . . . when the proposed amendment would be futile"; specifically, when a new amended complaint would not survive a renewed Rule 12(b)(6) motion to dismiss. *Kottmyer v. Maas,* 436 F.3d 684, 692 (6th Cir. 2006).

Here, Olwin has already repleaded once, but is no closer to viable fraud and unjust enrichment claims than it was in the First Amended Complaint. The fraud (Claim Two) allegations do not support an inference that anyone willfully misrepresented anything with respect to the Machine; rather, the Machine simply has not worked as it was supposed to pursuant to the Agreement. In other words, Olwin is alleging a garden-variety breach of contract claim, and absent additional specific allegations of bad faith and detrimental reliance that it cannot provide, that breach of contract claim may not be transformed into one for fraud. Further, Olwin has pleaded a paradox with

respect to breach of contract (Claim One) and unjust enrichment (Claim Three). Olwin can only recover in unjust enrichment if MultiCam is not in contractual privity with Great Lakes. Yet, if MultiCam is not in privity, then it cannot be sued for unjust enrichment, because it is not alleged that MultiCam received any independent benefit. These are structural problems that repleading cannot fix. Accordingly, Olwin will not be granted leave to amend further Claims Two and Three, and they are dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, MultiCam's Partial Motion to Dismiss (Doc. #41) is SUSTAINED. Claims Two (Fraud) and Three (Unjust Enrichment) in the Second Amended Complaint (Doc. #38) are dismissed with prejudice as against MultiCam. Final judgment shall ultimately enter in favor of MultiCam and against Olwin on those claims.

IT IS SO ORDERED.

February 5, 2024

*Walter H. Rice*
WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT